UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY MILLER,                                    Case No. 17-11006

        Plaintiff                               David M. Lawson
v.                                              United States District Judge

PAUL KLEE, NICKOLAS LESLIE,                     Stephanie Dawkins Davis
HERB BRIGHTON, STEPHEN                          United State Magistrate Judge
YOUNG, and BRENT,

        Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTIONS FOR SUMMARY JUDGMENT BASED ON FAILURE
## TO EXHAUST ADMINISTRATIVE REMEDIES (Dkt. 22, 24)

## I.    PROCEDURAL HISTORY

*Pro se* plaintiff, Tony Miller, a prisoner in the custody of the Michigan

Department of Corrections (MDOC), filed this civil rights lawsuit on March 29,

2017.  (Dkt. 1).  All defendants except for defendant Brent (who has not yet been

served with the complaint) have filed motions for summary judgment based on

plaintiff's failure to exhaust administrative remedies.  (Dkt. 22, 24).  Plaintiff filed

a combined response to the two motions (Dkt. 26) and defendants filed a reply

(Dkt. 28).  In addition, plaintiff filed a sur-reply, without leave of court.  (Dkt. 32).

This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment based on exhaustion of administrative remedies be **DENIED** without prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff's complaint sets forth two claims: one for sexual assault by defendants Leslie, Young, and Brighton and a second claim for retaliation by defendant Brent and defendant Klee.  Plaintiff's specific allegations are as follows:

> Warden Paul Klee authorized the issuing of three displincr [sic] reports against me for filing grievance (see exhibit A), 2) Capt. D. Messer retaliate for me writing the grievance rather than afford me my rights under PREA 3) Lt. Ringman, participate in the retaliation for writing of the PREA grievance by writing a displinary [sic] rather than conducting a proper investigation 4) Sgt. Leslie, Officer Young, Officer Brighton, sexually assaulted me when conducting a body cavity search 5) Officer Brent retaliate against me by writing misconducts from 6 months prior and truning [sic] my phone off for contectin [sic] PREA hotline regarding sexually assault.

(Dkt. 1, Pg ID 3).  He further alleges:

> Warden Paul Klee penalized me for exercising my rights of access to the court when not contecting [sic] the state police regarding the incident and authoring three displinary [sic] actions for me filing the PREA [Prison Rape Elimination Act] grevance [sic] in violation of *Bounds v. Smith*, 430 US 817 (1977) also see Bureau of Prison Rules 88.31 2) Capt. D. Messer retaliate against me when writing displinary [sic] reports rather than providing me with a proper investigation of his co-worker in violation of *Ruiz v. Estelle*, 503 F Supp 1265 (SD Tex 1920) 3) Lt Ringman participate in the same

conduct in violation of *Millhouse v. Carlson*, 652 F 2d
371 (3d Cir. 1981) 4) Sgt. Leslie, Officer Brighton, and
Officer Young, conspired to sexually assault me
humiliate and harass me in violation of the PREA Rape
Elimination Act of 2003 (PREA).[1]

(Dkt. 1, Pg ID 3).

Defendants have moved for summary judgment based solely on the issue of

plaintiff's alleged failure to exhaust his administrative remedies.  Thus, the

undersigned will endeavor to detail plaintiff's efforts to exhaust his administrative

remedies, at least so far as the parties have provided such evidence to the Court.

Plaintiff appears to have filed three grievances pertaining to the allegations in the

complaint.  In the analysis section below, the undersigned will discuss the

significance of plaintiff's Prison Rape Elimination Act (PREA) grievances versus

grievances filed under the MDOC Directive 03.02.130 – the directive containing

the three step grievance process typically required to exhaust any grievable claims

before bringing them to this Court.

On May 6, 2016, plaintiff filed a PREA grievance complaining of being

"sexually violated and sexually harassed" on that same day by three guards.

(5/6/16 PREA Step I Grievance, Dkt. 22-3, Ex. 2, Pg ID 119, ARF 1605 17606).

Plaintiff filed a second grievance with the same identifying number on May 17,

---

[1] While Captain Messer and Lt. Ringman are mentioned in plaintiff's complaint, plaintiff
did not list them as defendants being sued in this matter.  (Dkt. 1, Pg ID 1).

2016, alleging further sexual harassment on May 15, 2016.  (5/17/16 PREA Step I

Grievance, Dkt. 1, Pg ID 13; Dkt. 22-3, Ex. 2, Pg ID 120).  Plaintiff received two

Step I Emergency Responses to this grievance.  (5/27/16 and 5/31/16 Emergency

PREA Responses, Dkt. 22-3, Ex. 2, Pg ID 121-122).  The response found at Dkt.

22, Ex. 2 Pg ID 122 refers to conduct alleged to have taken place on May 6, 2016.

The response found at Dkt. 22-3, Ex. 2, Pg ID 121 does not refer to the date of any

particular conduct, so it is not clear to which of the two grievances with the same

identifier it is tied.  On June 22, 2016, prison officials completed their investigation

into plaintiff's complaint of misconduct alleged to have occurred on May 6, 2016

and found no evidence to support the complaint.  (PREA Notification, Dkt. 1, Pg

ID 26, 32).  This report was purportedly provided to plaintiff on June 24, 2016.  *Id*.

Neither party provided a copy of any investigation results relating to the May 15,

2016 incident.

Plaintiff filed a Step II PREA grievance appeal on June 30, 2016 relating to

the May 15, 2016 incident.  (PREA Step II Grievance, Dkt. 22, Ex. 2, Pg ID 123,

ARF 1605 17606).  Plaintiff's Step II appeal was denied as untimely because the

reviewer determined that plaintiff's original grievance was filed on May 25, 2016[2]

and responded to on May 26, 2016, according to the Step II PREA Grievance

---

[2] May 25, 2016 appears to be the date the May 6, 2016 grievance was received by the
PREA Coordinator.  (Dkt. 22, Ex. 2, Pg ID 119).

4

Appeal Response.  (Step II PREA Grievance Appeal Resp., Dkt. 22, Ex. 2, Pg ID

124).  According to the Step II response, plaintiff was required to file his Step II

appeal within 10 calendar days (in accordance with Director's Office

Memorandum 2016-29) after the response was due, and plaintiff failed to do so.

*Id*.

Also on May 6, 2016, plaintiff filed another PREA grievance, # ARF 1605

17498, which recounts the same facts as those set forth in grievance # ARF 1605

17606, albeit in more detail.  (Complaint, Dkt. 1, Pg ID 6-7; Second 5/6/16 PREA

Step I Grievance, Dkt. 22, Ex. 2, Pg ID 115-116).  The Step I emergency response

for # ARF 1605 17498 was combined with one of the Step I emergency responses

to # ARF 1605 17606.  (Emergency PREA Grievance Response, Dkt. 22, Ex. 2, Pg

ID 121).  On June 20, 2016, prison officials completed their investigation into

plaintiff's claims and concluded that there was no evidence to support the alleged

sexual misconduct.  (PREA Notification, Dkt. 1, Pg ID 25, 31).  Plaintiff

purportedly received a copy of this report on June 24, 2016.  *Id*.  Plaintiff filed a

Step II PREA grievance appeal on June 30, 2016.  (Dkt. 1, Pg ID 9; Dkt. 22, Ex. 2,

Pg ID 117).  Plaintiff's Step II appeal was denied as untimely because the reviewer

determined that plaintiff's original grievance was filed on May 25, 2016[3] and

---

[3] May 25, 2016 appears to be the date this May 6, 2016 grievance was received by the
PREA Coordinator.  (Dkt. 22, Ex. 2, Pg ID 115).

responded to on May 27, 2016 (according to the Step II Grievance Appeal Response).  (Dkt. 22, Ex. 2, Pg ID 118).  According to the Step II response, plaintiff was required to file his Step II appeal within 10 calendar days (in accordance with Director's Office Memorandum 2016-29) after the response was due and plaintiff failed to do so.  *Id.*

On May 7, 2016, plaintiff also filed a standard grievance under P.D. 03.02.130 regarding his sexual misconduct complaints, # ARF 1605 17661. (5/7/16 Prison Grievance Form, Dkt. 22, Ex. 2, Pg ID 125; Dkt. 1, Pg ID 10[4]). Though this grievance was filed as a standard grievance, in response to it plaintiff was provided a "PREA Grievance Response" on May 31, 2016 indicating that he would be notified of the outcome of the investigation when it was concluded. (5/31/16 PREA Grievance Resp., Dkt. 22, Ex. 2, Pg ID 126).  It is not clear from the record if or when plaintiff received the results of the investigation, but he filed a Step II PREA appeal on June 30, 2016.  (PREA Step II Grievance Form, Dkt. 1, Pg ID 12).  Plaintiff's Step II appeal was denied as untimely because the reviewer determined that plaintiff's original grievance was filed on May 26, 2016[5] and

---

[4] The copy of this grievance attached to plaintiff's complaint has a slightly different identifying number: ARF 1605 1766, but the substance of plaintiff's complaint appears to be identical to the copy provided by defendants.  (Dkt. 1, Pg ID 10).

[5] May 26, 2016 appears to be the date the May 7, 2016 grievance was received by the PREA Coordinator.  (Dkt. 22, Ex. 2, Pg ID 125).

responded to on May 27, 2016.  According to the Step II response, plaintiff was required to file his Step II appeal within 10 calendar days (in accordance with Director's Office Memorandum 2016-29) after the response was due and plaintiff failed to do so.  (Step II PREA Grievance Appeal Response, Dkt. 1, Pg ID 11). Notably, defendants have not provided to the Court a copy of the Director's Office Memorandum 2016-29 which is referenced in the grievance responses.  It is undisputed that plaintiff did not take any grievance pertaining to the allegation in the complaint through the three step grievance procedure outlined in P.D. 03.02.130.

Regarding plaintiff's claims that defendants Klee and Messer retaliated against him, plaintiff attached to his complaint copies of three misconduct tickets that were issued between June 22 and July 12, 2016.  (6/22/16 Misconduct Report, Dkt. 1, Pg ID 17; 6/23/16 Misconduct Report, Dkt. 1, Pg ID 18; 07/12/16 Misconduct Report, Dkt. 1, Pg ID 19).  The June 22, 2016 and June 23, 2016 misconduct tickets relate to plaintiff's filing of PREA complaints claiming officer misconduct alleged to have occurred on May 6, 2016.  The July 22, 2016 ticket purports to relate to plaintiff's filing of a PREA complaint for a claim of officer misconduct alleged to have occurred on May 7, 2016.[6]  *Id.*  Neither party provided

---

[6] It is unclear whether the reference to a complaint pertaining to conduct from May 7, 2016 is related to any of the grievances that are part of this record, as none of the grievances that are a part of this record allege misconduct on that date.

evidence of the results of any misconduct hearings associated with these misconduct reports.

## III.   DISCUSSION

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of

the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

> B.    Exhaustion of Administrative Remedies

> 1.    Legal Standards

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock,* 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. "Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones,* 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Jones*, 549 U.S. at 218. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized repeatedly that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Here, defendants bear the burden of proof on their affirmative defense of failure to exhaust administrative remedies.

2.    Retaliation Claims

According to defendant Klee, who is the only defendant currently served against whom a claim of retaliation has been made, the administrative process applicable to plaintiff's non-sexual assault claims (i.e., plaintiff's retaliation claims) is governed by MDOC Policy Directive 03.02.130, which requires that prisoners follow the three-step grievance process set forth therein. (Klee Brief, Dkt. 24, Pg ID 155-160; Policy Directive, Dkt. 22, Ex. 3). And, plaintiff did not file any grievances regarding the conduct complained of in the complaint through

the three step grievance process.  (Affidavit of Step III Grievances, Dkt. 22, Ex. 1).

Thus, defendant Klee maintains that plaintiff failed to exhaust his administrative

remedies as to his retaliation claims.  In response, plaintiff points out that, pursuant

to PD 03.02.130(F)(2), "decisions made in hearings conducted by hearing officers

of the state office of Administrative Hearings and Rules…and issues directly

related to the hearing process" are non-grievable.  (Policy Directive, Dkt. 22, Ex. 3,

Pg ID 128-129).  Thus, plaintiff maintains that his available remedy was the appeal

process outlined in PD 03.03.105 (addressing appeal of misconduct decisions).

(Plaintiff's Response, Dkt. 26, Pg ID 168).  Plaintiff asserts that the traditional

grievance process was not available to him because the MDOC, for the past 20

years, has treated every challenge to or complaint about a misconduct report as

non-grievable.

Rather than responding to plaintiff's argument, defendants (in a joint reply)

argue that the finding of guilt on the misconduct tickets defeats his challenge under

the "checkmate" doctrine.  However, because defendants raise this argument for

the first time in reply, it is not considered. [7]  Furthermore, the Court would have no

---

[7] In their reply brief, defendants argue that plaintiff's retaliation claims, in any event, are
without merit under the "checkmate" doctrine.  (Dkt. 28, p. 1).  However, defendants moved
solely on the issue of exhaustion and did not raise this issue in their initial moving papers.  Thus,
the undersigned declines to address it.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th
Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs . . .
do not provide the moving party with a new opportunity to present yet another issue for the
court's consideration.  Further the non-moving party ordinarily has no right to respond to the
reply brief. . . . As a matter of litigation fairness and procedure, then, we must treat [such issues]

way of concluding its merit in any event, as the Court has not been presented with evidence documenting the outcome of any of the misconduct hearings. In framing the issue and responding to plaintiff as they have, defendants do not address the fact that a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies. *See Siggers v. Campbell*, 652 F.3d 681, 693-694 (6th Cir. 2011).[8] Otherwise, the prisoner is precluded from raising the claim as a basis to request a rehearing. Indeed, in *Siggers*, where the plaintiff made an argument that he should have been excused from proceeding to Steps II and III of the grievance process because, while housed in segregation, he could not obtain a form for his retaliation claim relating to the issuance of a misconduct report, the

---

as waived.") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

[8] Plaintiff's tickets, at least as far as the Court can tell, were minor misconduct tickets. (Dkt. 1, Pg ID 17-19; Dkt. 26, Pg ID 190-194; Dkt. 26, Pg ID 219-221); *see Taylor v. Woods*, 2017 WL 5380897, at *3 (W.D. Mich. Nov. 14, 2017) ("Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts."). It is not clear if the record includes all of the misconduct tickets at issue. Seemingly, *Siggers* also applies when a minor misconduct ticket is at issue given the similar exclusion for minor misconduct tickets from the three step grievance process. (Dkt. 22, Ex. 3, ¶ F(4), decisions made in minor misconduct hearings are not grievable under PD 03.02.130, Pg ID 128-129); *see e.g.*, *Alexander v. Ojala*, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), report and recommendation adopted, 2016 WL 6659133 (W.D. Mich. Nov. 10, 2016) (Plaintiff could only exhaust retaliation claim for minor misconduct ticket by asserting this claim during his misconduct hearing.); *Ayotte v. Stemen*, 2016 WL 5027594, at *3 (E.D. Mich. Sept. 20, 2016) (Prisoner must raise argument that minor misconduct ticket was retaliatory during the first misconduct hearing in order to properly exhaust such claims.).

Sixth Circuit observed that, "Michigan's rules provide that the <u>only</u> avenue for challenging such reports is a hearing." *Id.* at 694 (emphasis supplied). Therefore, the plaintiff's inability to obtain the form while in the hole was of no consequence. *Id. See also*, *Harris-Bey v. Alcodray*, 2017 WL 3124328 (E.D. Mich. 2017) (Lawson, J.) (Court found claim that the defendant wrote misconduct ticket in retaliation not to have been properly exhausted because the plaintiff failed to raise the retaliation claim at the misconduct hearing, and did not appeal the finding of guilt following the hearing as required by MDOC PD 03.03.150, which is the sole avenue for such appeal.) (citing *Siggers*); *Carr v. Booker*, 2014 WL 409026 (E.D. Mich. Feb. 3, 2014).

By focusing on the three-step grievance process, defendants tacitly suggest that a different analysis applies. Indeed, the undersigned recognizes there are contrary unpublished decisions. For example, in *Ragland v. City of St. Louis, Mich.*, 2012 WL 511827, at *6 (E.D. Mich. 2012), report and recommendation adopted sub nom. *Ragland v. Alexander*, 2012 WL 511801 (E.D. Mich. Feb. 16, 2012), aff'd (Feb. 11, 2013), the court concluded that "while it is true that Plaintiff cannot grieve the decision of an administrative hearing officer, his Complaint allegation is that the underlying misconduct charge—not the hearing officer's decision—was retaliatory. Plaintiff could have and was, therefore, required to grieve the alleged retaliatory misconduct charge." (Footnote omitted) (citing *Boyd*

*v. Ray*, 19 Fed. Appx. 209, 2001 WL 1042261 (6th Cir. 2001) (where the plaintiff's claim did not involve the administrative hearing officer's decision but rather an allegation that the underlying misconduct charge was false, he was required to exhaust his administrative remedies).  Importantly however, *Boyd* pre-dated *Siggers,* and the *Ragland* decision did not discuss *Siggers* at the district court or appellate level.  Consequently, neither are particularly persuasive in the face of a contrary published Sixth Circuit decision.

Here, defendants (who bear the burden of proof, *Arnett*, *supra*) have not presented the Court with any evidence at all regarding the misconduct hearing proceedings.[9]  On this record, the Court cannot determine whether plaintiff raised any retaliation issues at those misconduct hearings, what defendants' position on this issue is, or whether those claims were appealed and thus, properly exhausted.  Accordingly, it is not possible to determine whether plaintiff properly exhausted his retaliation claims and defendants' motion for summary judgment in this regard must be denied without prejudice.

---

[9] Plaintiff provided some documents relating to a few of the misconduct proceedings, but the record does not appear to be complete.  Moreover, because defendants did not raise this issue in their moving papers, plaintiff has not had any opportunity to present further evidence on this matter.

3.    Sexual Assault Claims

Defendants also maintain that plaintiff failed to properly grieve his sexual assault claims through the three step process.  They acknowledge MDOC P.D. 03.02.130(Q), which provides that a prisoner alleging staff sexual misconduct may file the grievance directly with the inspector of the facility, but they maintain that this paragraph does not render staff sexual misconduct to be non-grievable.  They also point out that MDOC P.D. 03.03.140, "Prohibited Sexual Conduct Involving Prisoners," paragraph Z, explicitly states:

> Complaints filed by a prisoner regarding conduct prohibited by this policy shall serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all steps of the grievance process in compliance with PD 03.02.130 "Prisoner/Parolee Grievances."

(Dkt. 22, Ex. 4).  Defendants assert that plaintiff did not take any grievance regarding sexual assault through the three step process.  (Dkt. 22, Ex. 1).  In the alternative, defendants argue that plaintiff failed to timely appeal his PREA Grievances and, as a result, has also failed to properly exhaust his administrative remedies in that regard.

In response, plaintiff maintains that he was not supplied appeal forms to timely comply with the appeal deadline.  (Dkt. 26, Ex. 8).  Plaintiff informed the PREA coordinator that he never received any response or a copy of the PREA complaint.  He followed up with a kite.  *Id.*  Plaintiff also points out that he

attempted to file a traditional grievance, but that D. Martin "converted" it to a

PREA grievance.  (Dkt. 26, Ex. 2, Pg ID 184-185).  Plaintiff maintains that he was

actively prevented from accessing the grievance procedure and prison officials

should not now be able to claim non-compliance.

As concluded in *Mitchell v. Barstole*, paragraph (Z) of Policy Directive

03.03.140 governs this question and specifically mandates that complaints of

sexual misconduct and harassment must be exhausted through the three-step

procedure in PD 03.02.130.  *Mitchell,* 2016 WL 7031916, at *3 (E.D. Mich. Oct.

21, 2016) (Majzoub, M.J.), report and recommendation adopted, 2016 WL

7013013 (E.D. Mich. Dec. 1, 2016) (Edmunds, J.).  The *Mitchell* court also pointed

out that this requirement is reiterated in MDOC Policy Directive 03.02.130(B),

which says that:

> Complaints filed by prisoners regarding grievable issues
> as defined in this policy serve to exhaust a prisoner's
> administrative remedies only when filed as a grievance
> through all three steps of the grievance process in
> compliance with this policy.  This includes but is not
> limited to complaints of conduct in violation of PD
> 03.03.140 "Prohibited Sexual Conduct Involving
> Prisoners".

*Id*. (*see also* Dkt. 22, Ex. 3, Pg ID 128).  Thus, the *Mitchell* court concluded that

"while a prisoner may make [sic] report sexual misconduct through a variety of

channels, the prisoner must go through the formal grievance process in order to

exhaust the administrative process before proceeding to file suit in federal court."

*Id.* (citing *Koetje v. Norton*, 2014 WL 4705432, at *3 (E.D. Mich. June 18, 2014) (Morris, M.J.) ("Any allegations of prohibited sexual conduct involving prisoners falls under the jurisdiction of the Internal Affairs Division.  To properly exhaust remedies, [MDOC Policy Directive 03.03.140] explicitly requires that inmates file grievances through the ... 03.02.130 grievance policy in addition to Internal Affairs investigations."); *see also*, *John Doe 1 v. Mich. Dep't of Corr.*, 2015 WL 1600772, *2 (E.D. Mich. Apr. 9, 2015) (Cleland, J.) (PREA standards do not affect the exhaustion analysis; the PLRA's exhaustion requirement is not superseded or otherwise altered by the PREA).

Given that plaintiff must exhaust such grievances through the three-step process, his protestations that he was not able to timely complete the PREA grievance process are seemingly irrelevant.  Notably, however, plaintiff does appear to have filed a standard grievance as to one sexual assault incident on May 7, 2016.  (Dkt. 22-3, Pg ID 125).  While he admittedly did not proceed through the three-step process, he claims, however, that his grievance was "converted" to a PREA grievance by D. Martin and he did not timely receive appeal forms.  (Dkt. 26, Pg ID 174; Dkt. 22, Ex. 2, Pg ID 125-126).  Defendants assert that plaintiff's claim that he was not provided an appeal form does not excuse his failure to timely appeal and he is not permitted to simply abandon the grievance process or fail to

comply with all procedural requirements to exhaust at every step of the process. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

Generally speaking, this is true; a prisoner may not forego all steps of the MDOC grievance procedure merely because he did not receive a timely response to his Step I grievance.  Rather, just as prison officials may not disregard the grievance procedure by refusing or failing to respond to a grievance at any step of the process in order to prevent a prisoner from exhausting his grievance, *see e.g. Boone v. Fighter*, 2007 WL 2694321, *15 (E.D. Mich. Aug. 16, 2007), report and recommendation adopted in part, rejected in part, 2008 WL 880208 (E.D. Mich. Mar. 31, 2008), a prisoner may not refuse to complete the grievance process, even when he has not received a timely response at any step of the grievance process. As pointed out in *Smothers v. MDOC*, 2007 WL 1238898, *1 (W.D. Mich. 2007), in applying the Supreme Court's rational from *Woodford*, under MDOC policy if a prisoner "does not receive a timely response" to a grievance, he may appeal that matter to Step II in the grievance process.  *Smothers*, at *1.  In *Smothers*, the plaintiff admitted that he did not file a Step II grievance against the defendants after failing to receive a response.  Therefore, the court concluded that the plaintiff failed to follow the policy set forth by the MDOC to proceed to the next step in the grievance process.  Accordingly, pursuant to *Woodford*, the plaintiff did not meet the exhaustion requirement.  *Id*.; *see also*, *Ward v. Luckey*, 2013 WL 5595350, at

*7-8 (E.D. Mich. Oct. 11, 2013) (Where prison officials did not respond to the grievance within the time permitted by MDOC's grievance policy directive; that same policy directive made clear to the prisoner what he should do if that happened: appeal without continuing to wait for a response. Thus, exhaustion was not excused by the failure of prison officials to respond.) (distinguishing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989 (6th Cir. 2004)).

Here, plaintiff says he tried to comply with the various sets of rules requiring exhaustion of his PREA claims and his retaliation claims, but it was confusing. (Dkt. 26, Pg ID 175). Tracing plaintiff's submissions and the responses he received, this is understandable. Plaintiff completed a standard grievance on May 7, 2016, which was assigned a PREA grievance identifier. (Dkt. 22, Ex. 2, Pg ID 125; Dkt. 26, Pg ID 186). This grievance is marked "received" on May 26, 2016. *Id*. The response to that grievance by D. Martin is entitled a "PREA GRIEVANCE RESPONSE." (Dkt. 22, Ex. 2, Pg ID 126; Dkt. 26, Pg ID 187). A Step I response under the standard grievance procedure is due 15 business days after receipt of the grievance unless an extension is granted. (Dkt. 22, Ex. 3, Pg ID 132, ¶ X). That response would have been due on June 17, 2016. Plaintiff received the PREA response from D. Martin on May 31, 2016. (Dkt. 22, Ex. 2, Pg ID 126). The response states as follows:

> Your PREA Grievance regarding sexual abuse/
> harassment has been received and reviewed. You have

alleged sexual abuse/harassment that has not been previously investigated.  Your allegation(s) have been forwarded to Captain Messer for investigation in accordance with P.D. 03.03.140 "Prohibited Sexual Conduct Involving Prisoners" and/or P.D. 01.01.140 "Internal Affairs."  The AIPAS number assigned to your investigation is AIPAS #17661.  You may be monitored as part of the investigative process to ensure additional abuse/harassment nor retaliation for reporting such conduct is occurring.  You will be notified of the outcome of the investigation at the conclusion of the investigation.

Although the investigation is pending, this is your PREA Grievance response.  Should you have additional issues you wish to address, you may submit an additional PREA Grievance for those issues which fall under the jurisdiction of P.D. 03.03.140.

(Dkt. 22, Ex. 2, Pg ID 126).  Inasmuch as plaintiff had already separately filed a PREA grievance for the subject incident (i.e. pursuant to P.D. 03.03.140), this response is curious.  Plaintiff reasonably could have concluded, based on the content of this response, that prison officials were addressing his grievance via the PREA procedure or the Internal Affairs process, and that he did not need to proceed further through the three step grievance procedure.  This is particularly true here, where the plaintiff initiated his grievance as a standard grievance and it was apparently involuntarily converted into a PREA grievance.[10]  Thus, if prison officials misled plaintiff, albeit perhaps unintentionally, into believing that PREA

---

[10] As discussed, *infra*, it is not clear how the Internal Affairs procedure and the PREA grievance process differ or how they intersect.

was the proper method for exhausting his sexual assault claims, it is reasonable that he would continue to use this procedure for exhaustion. *See Ross v. Blake*, 136 S.Ct. 1850, 1858-60 (2016) (Supreme Court concluded that if the prisoner is effectively barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required: "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it.  And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.").

The undersigned cannot determine from this record whether plaintiff was misled about how to exhaust his administrative remedies thereby rendering the process essentially unavailable.  Fundamentally, "[c]ompliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.  From the record presented, the appropriate grievance procedure for sexual misconduct and whether plaintiff complied with it is simply indiscernible (*see infra*).  Given that defendants bear the burden of proving that plaintiff did not properly exhaust his administrative remedies, the motion for summary judgment should be denied without prejudice. *Alexander v. Hoffman*, 2017 WL 3946258, at *3 (E.D. Mich. Sept. 8, 2017) (Berg, J.) (Defendants bear

23

the burden of production and persuasion on the issue of exhaustion.) (citing *Surles*

*v. Andison*, 678 F.3d 452 (6th Cir. 2012); *Payne v. Gifford*, 2017 WL 4329631, at

*7 (S.D. Ohio Sept. 5, 2017), report and recommendation adopted, 2017 WL

4310543 (S.D. Ohio Sept. 28, 2017) ("It is entirely possible that, if the record were

better developed, the Defendants would prevail on the non-exhaustion argument.

However, the undersigned cannot recommend summary judgment or dismissal for

failure to exhaust on the record presented, which remains too ambiguous to warrant

entry of judgment on this basis.") (footnotes omitted) (citing *Surles*, 676 F.3d at

458)).

   To further complicate matters, it appears that defendants utilized the Internal

Affairs procedure at least with respect one of plaintiff's sexual misconduct

complaints, as opposed to the standard three step grievance process, and the

Internal Affairs procedure can apparently be used to exhaust plaintiff's

administrative remedies.  As defendants acknowledge, Paragraph Q of PD

03.02.130 indicates that if the Internal Affairs Division takes over a grievance, it

proceeds through that process, unless it is determined to fall outside the jurisdiction

of Internal Affairs, in which case it will continue to be processed through the three

step process in PD 03.02.130.  (Dkt. 22, Ex. 3, ¶ Q, Pg ID 130).  The record here

reflects that Internal Affairs investigated at least some of plaintiff's complaints and

there is nothing in the record to suggest that Internal Affairs determined that

plaintiff's complaints fell outside their jurisdiction, which would return plaintiff's complaints to the three step process. *See e.g.*, (Dkt. 22, Ex. 2, Pg ID 126) ("Your allegation(s) have been forwarded to Captain Messer for investigation in accordance with P.D. 03.03.140 'Prohibited Sexual Conduct Involving Prisoners' and/or P.D. 01.01.140 'Internal Affairs.'"). Notably, courts in this district have concluded that the Internal Affairs process exhausts the grievance. *See Doe v. Anderson*, 2017 WL 4684614 (E.D. Mich. Aug. 18, 2017) (Tarnow, J.) ("However, the policy directives concerning grievances that are investigated by internal affairs do not provide notice to a prisoner that their grievance must be appealed through all three steps, even after they accept jurisdiction and investigate the charge. *See* 29-3 at ¶ Q) (citing *Langton v. Combalecer*, 2008 WL 896062, at *3 (E.D. Mich. Mar. 31, 2008) (Hood, J.) (holding "Defendants' argument that Plaintiff did not utilize the internal MDOC grievance procedures is disingenuous, as sexual misconduct claims are transferred out of the grievance process to Internal Affairs. The Internal Affairs investigation satisfies the exhaustion requirement.").

As to defendants' alternative argument that plaintiff's claims are not exhausted because he failed to comply with the PREA grievance process, the Court cannot fully evaluate this claim because there appears to be a Director's Office Memorandum that governs PREA grievances, which is not a part of the record before the Court. More particularly, defendants assert that plaintiff's Step II PREA

Appeals were untimely and as a result, cannot serve to exhaust his claims.  All of the Step II PREA appeals contain language indicating that prison officials rely on something called the Director's Office Memorandum 2016-29, which apparently governs the appeal process and contains deadlines.  Plaintiff provides a copy of the Director's Office Memorandum dated December 5, 2016, effective on January 1, 2017 (Memorandum 2017-23), which contains a two-step grievance process for PREA complaints.  (Dkt. 26, Pg ID 180-182).  According to Memorandum 2017-23, the PREA coordinator must ensure that the prisoner is sent a written response within 60 days of the Step I PREA grievance, unless an extension is given.  Memorandum 2017-23 also provides that a prisoner may file a Step II appeal if dissatisfied or if he did not receive a response at Step I.  *Id.*  To file a Step II appeal, the prisoner must request a PREA Prisoner Grievance Appeal Form from the PREA coordinator and send the completed form to the PREA administrator within 10 calendar days after receiving the response or within 10 calendar days after the response was due, if no response is received.  *Id.*  Memorandum 2017-23 was not in effect during the pendency of plaintiff's grievances.  However, based on the sequence of events recited, there appears to have been some type of two step procedure, with a 10 day appeal period  in place at the time of the events in plaintiff's complaint, but again, defendants have not provided that procedure to the Court.  (*See e.g.*, Dkt. 22, Ex. 2, Pg ID 122) ("In accordance with DOM 2016-29,

and the subsequent posting within the facility, Emergency PREA Grievances are to

be filed when believed by the grievant that the alleged victim is subject to

substantial risk of imminent sexual abuse."); Dkt. 22, Ex. 2, Pg ID 118 ("Director's

Office Memorandum 2016-29 requries [sic] offenders to file any Step II

administrative appeal to the PREA Administrator within 10 calendar days after the

date the resonse [sic] was due, including any extension.")).[11]  As such, the Court

has no way of determining how this Memorandum might operate in conjunction

with the general grievance process, or as a stand-alone grievance procedure.

Without a copy of the Memorandum, the Court simply cannot assess whether

plaintiff complied with its requirements.

  If the prison officials were following procedures like those set forth in

Memorandum 2017-23, or what is presumably a similar predecessor (DOM 2016-

29), the confusion regarding exhaustion and appeal only grows.  Under

Memorandum 2017-23, a prisoner has 10 calendar days to appeal the Step I

response, but when a prisoner files an "emergency" PREA grievance, there is an

"emergency" response, apparently in addition to the notice of Sexual Abuse and

---

[11]  Interestingly, unlike the PREA policy directive, nothing in Memorandum 2017-23 suggests that a prisoner must also pursue a grievance under PD 03.03.130, the standard three step grievance procedure.  It is notable that in *Mitchell v. Barstole* whatever policy or memorandum was in place regarding grieving sexual assaults was not placed in the record and thus, that Court was not aware of any other policy or memorandum that might have been applicable to the exhaustion of sexual assault grievances.  (*See Mitchell v. Barstole*, Case No. 16-10247, E.D. Mich., Dkts. 17-20).

Sexual Harassment Investigative Findings and Action.  In addressing plaintiff's

Step II PREA appeals, prison officials here calculated the 10 day period from the

date of the emergency Step I response,[12] rather than the date of the Investigative

Findings and Action report.  If the latter date were used, plaintiff's Step II appeals

(at least for the two grievances for which the Court has a copy of such findings)

would have been timely.  (*See* Dkt. 1, Pg ID 32, Investigative Findings and Action

dated 6/24/16 for AIPAS 17606; Dkt. 22, Ex. 2, Pg ID 123, Step II PREA Appeal

dated 6/30/16 for 17606; Dkt. 22, Ex. 2, Pg ID 124, Step II PREA denial dated

8/4/16).  This appears to be contrary to Memorandum 2017-23 and to the

emergency responses themselves, which do not direct plaintiff to appeal to Step II,

but which advise him to file a new emergency PREA grievance if he feels that he

is subject to a substantial risk of imminent abuse.  (Dkt. 22, Ex. 2, Pg ID 121-122).

Further, one of the emergency responses indicates that he would be later notified of

the outcome of the investigation, further suggesting that an appeal to Step II at this

point is not ripe.  (Dkt. 22, Ex. 2, Pg ID 121).  Thus, it very well could be the case

that plaintiff properly followed the two-step PREA grievance process.

   Even if plaintiff did properly follow the two step PREA grievance process, it

is still not clear on this record that following this process would have exhausted

---

[12]  To confuse matters further, there are two "emergency" initial responses to 17606.  One is dated May 27, 2016 and one is dated May 31, 2016.  (Dkt. 22, Ex. 2, Pg ID 121-122).

plaintiff's administrative remedies, given Paragraph Z in P.D. 03.03.140; nor is it clear whether and to what extent plaintiff's grievances were taken over as Internal Affairs investigations, in accordance with Paragraph Q of P.D. 03.03.140. In sum, the Court cannot conclude on this incomplete record, and without input from defendants as to their position on how their policies and procedures intersect, that plaintiff was required to comply with the three step-grievance procedure when the MDOC apparently promulgated a separate grievance process relating to sexual assaults and misconduct. The undersigned suggests that the Court reserve judgment on this issue unless and until the moving parties provide a complete record regarding exhaustion as discussed throughout this report and recommendation.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions for summary judgment based on exhaustion of administrative remedies be **DENIED** without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health*

*and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 23, 2018                           s/Stephanie Dawkins Davis
                                                  Stephanie Dawkins Davis
                                                  United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 23, 2018,</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Tony Miller, #419276, Michigan Reformatory, 1342 West Main Street, Ionia MI 48846</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov