UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY MILLER,                                Case No.: 17- cv -11006

      Plaintiff,                        David M. Lawson
v.                                          United States District Judge

PAUL KLEE, NICKOLAS                         Michael J. Hluchaniuk
LESLIE, HERB BRIGHTON,                      United States Magistrate Judge
STEPHEN YOUNG, and BRENT,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANTS KLEE, LESLIE, BRIGHTON, YOUNG, AND BRENT'S**
**MOTION FOR SUMMARY JUDGMENT (ECF No. 63)**

## I.  PROCEDURAL HISTORY

Plaintiff filed this *pro se* complaint on March 29, 2017 alleging violations of

his constitutional rights actionable under 42 U.S.C. § 1983. (ECF No. 1). The

defendants filed motions for summary judgment on August 4, 2017, asking that the

complaint be dismissed due to the plaintiff's alleged failure to exhaust his

administrative remedies before initiating the present action. (ECF Nos. 22 and 24).

A Report and Recommendation was filed on February 23, 2018, by Magistrate

Judge Davis recommending that those motions be denied. ((ECF No. 35). The

Report and Recommendation was adopted by District Judge Lawson on March 15, 2018. (ECF No. 38).

A case management order was entered on September 26, 2018 (ECF No. 46) and later amended on November 15, 2018. (ECF No. 54). Plaintiff filed a motion to compel discovery on December 18, 2019 (ECF No. 56) and that motion was granted in part and denied in part on April 11, 2019. (ECF No. 58).  After objections were filed to the order (ECF No. 59), the objections were overruled on April 24, 2019. (ECF No. 61).

The present motion for summary judgment was filed by all defendants on May 20, 2019. (ECF No. 63).  Plaintiff filed his response to the motion on July 11, 2019. (ECF No. 70). Defendants have not filed a reply to the response. Plaintiff's response to the motion for summary judgment included statements that indicated defendants had not produced certain discovery items, specifically relevant video footage of incidents identified in the litigation. On November 18, 2019, an order was entered directing defendants to produce video footage of events described by plaintiff. (ECF No. 71). Defendants responded to that order stating that any video footage of those events either never existed or no longer existed because it would have been recorded over. (ECF No. 72).

## II.    FACTUAL BACKGROUND

Plaintiff's verified complaint alleges that on May 6, 2016, while he was incarcerated at the Gus Harrison Correctional Facility (ARF) in Adrian, Michigan, he was being escorted from his housing unit to a location, referred to as the Control Center, by Sgt. Leslie, Off. Young, and Off. Brighton. At some point prior to arriving at the Control Center, plaintiff alleges that while Off. Young held his arms, which were handcuffed, Sgt. Leslie and Off. Brighton "opened up [his] jeans and went inside [his] underwear, touched [his] private areas gentiles [sic] and opened his buttocks [which resulted in plaintiff being] inappropriately searched of [his] gentiles [sic] and anal area without proof of any evidence that [he] had anything in or on [his] body." (ECF No. 1, PageID.3,6).[1]  A strip search was subsequently conducted of plaintiff at the Control Center. The strip search was recorded on video (showing plaintiff from the waist up). Prior to the strip search actually starting, plaintiff alleges that Sgt. Leslie and Off. Young made comments like "[i]ts time to open up that ass up and see what's inside." (ECF No. 1, PageID.7). Plaintiff further alleges that he complained about being searched frequently and, in response, Sgt. Leslie threatened to issue a misconduct ticket and to "search [plaintiff's] cell and that personal property will come up missing or

---

[1] A verified complaint is treated as an affidavit for purposes of responding to a motion for summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (explaining that where a party files a verified complaint, the allegations contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment" (internal quotation marks omitted)).

destroyed." *Id*. The following day Sgt. Leslie did write a misconduct ticket regarding the statements plaintiff made during the strip search. (ECF No. 63-8, PageID.519). In responding to the ticket, plaintiff contended that he had been searched eight times in that manner and that is what he was complaining about to Sgt. Leslie. (ECF No. 63-8, PageID.521). Plaintiff was found guilty at the misconduct hearing on May 16, 2016, and he was given 14 days loss of privilege as a punishment.

Following the strip search on May 6, 2016, plaintiff completed a Prison Rape Elimination Act (PREA) grievance[2] form containing the allegations made against Leslie, Brighton, and Young regarding the search before the strip search at the Control Center.  That grievance was initially assigned Grievance Identifier No. 17498. (ECF No. 1, PageID.6).

Plaintiff apparently called the PREA Hotline on May 7, 2016, to complain about what he said was a comment by Off. Young, immediately following the May 6, 2016, strip search at the Control Center, in which Off. Young said something like "how does your asshole feel" to plaintiff. At some point in the process this grievance was also referred to as AIPAS #17498.[3] (ECF No. 63-16, PageID.591).

---

[2] While not explained in the pleadings, apparently a PREA grievance process is different than the process for a standard grievance filed by a prisoner.

[3] The record does not contain an explanation relating to the difference between the Grievance Identifier numbering system and the AIPAS numbering system. In the absence of an explanation it is assumed that the numbers are the basis of identification of the grievances regardless of whether they are referred to as Grievance Identifier or AIPAS.

Plaintiff also alleges that on, May 7, 2016, Off. Brighton made some comments to him about the strip search from the previous day including "what that asshole look like?" which was an apparent reference to plaintiff being required to expose his anal area during the strip search. (ECF No. 1, PageID.10).  Plaintiff completed a standard grievance form relating to these specific allegations that same day and that grievance was assigned Grievance Identifier No. 17661. *Id*.

On May 15, 2016, plaintiff alleges that officers, including Sgt. Leslie, came to his housing unit to "conduct a routine shakedown"[4] of the area and after plaintiff was "shook down" by one officer at the direction of Sgt. Leslie, Off. Brighton conducted a second search of plaintiff's belongings. Plaintiff asserts that he informed Off. Brighton that he had filed a "PREA complaint" against him after which Off. Brighton said to plaintiff "I like touching you and I'm going to give you something else to write about." Plaintiff subsequently completed a PREA grievance form regarding this incident on May 17, 2016 in which he characterized the incident as "a form of sexual harassment and retaliation and is an abuse of authority." This grievance was initially assigned Grievance Identifier No. 17606. (ECF No. 1, PageID.13).

---

[4] The term "shakedown" is not defined in the complaint but the undersigned assumes it refers to a search of a person or area in the prison.

The present record is confusing regarding the grievances that were filed and the events that followed. The first grievance plaintiff filed was a Prison Rape Elimination Act (PREA) grievance assigned Grievance Identifier 17498. The substance of that grievance was the inappropriate search plaintiff alleges was conducted on May 6, 2016, by Young, Brighton and Leslie prior to the strip search at the Control Center. (ECF No. 1, PageID.6). A second grievance, with identical allegations, was assigned Grievance Identifier 17606. (ECF No. 22-3, PageID.119). This is the same Grievance Identifier number assigned to the grievance regarding the May 17, 2006, incident. The allegations were referred for investigation on May 23, 2016, by Warden Klee. (ECF 63-11, PageID.545-546).

An "initial response" to "AIPAS# 17606 and 17498" was created on May 27, 2016, that stated that the allegations were being forwarded for investigation. Defendants' Motion Exhibit 15. (ECF 63-16, PageID.608). A "Step I Emergency PREA Grievance Response" was completed on May 31, 2016,  and that stated that the allegations in "AIPAS #17606 and #17498" and the allegations made on May 17, 2016, did not involve the "imminent risk of sexual abuse" and therefore "no additional emergent response is necessary." Defendants' Motion Exhibit 10. (ECF 63-11, PageID.560).  The investigation into these allegations authorized by Warden Klee was completed by Lt. Ringman on June 21, 2016. Defendants' Motion Exhibit 10. (ECF 63-11, PageID.541). The report was forwarded to

Warden Klee by Deputy Warden Ricumstrict on June 22, 2016. Defendants'

Motion Exhibit 10. (ECF 63-11, PageID.540). According to the report, the

investigation consisted of interviewing plaintiff, Sgt. Leslie, and Off. Brighton.

Defendants' Motion Exhibit 10. (ECF 63-11, PageID.543). Although the report

purported to address AIPAS# 17606, it only looked at the events of May 6, 2016,

and did not consider the events of May 15, 2016.  As a result of the report, on June

23, 2016, Warden Klee directed that plaintiff "should be written a misconduct for

making false allegations." Defendants' Motion Exhibit 10. (ECF 63-11,

PageID.540). On June 24, 2016, plaintiff was provided a copy of the "Investigative

Findings And Action" which reflected that there was "no evidence" to support the

allegations after a "thorough investigation" was done. Defendants' Motion Exhibit

10. (ECF 63-11, PageID.566).

Apparently having questions about his grievance, plaintiff filed an appeal

from this grievance on June 30, 2016. (ECF No. 22-3, PageID.117). The response

to the grievance appeal stated that plaintiff had waited too long to appeal and

therefore the appeal was denied. (ECF 22-3, PageID.118).

Defendants' motion asserts that Warden Klee authorized a misconduct

charge against plaintiff for making these allegations and then states "Plaintiff was

found guilty and was discipled [sic] with a loss of prison privileges" citing to

defendants' Motion Exhibit 10. (ECF 63, PageID.462). Unfortunately, defendants'

Motion Exhibit 10 (ECF 63-11, PageID.539-566) does not address the misconduct prosecution following the warden's authorization for such prosecution.

Defendant's Motion Exhibit 11 (ECF 63-12, PageID.567-568) is a "Misconduct Report" dated June 23, 2016, and prepared by Lt. Ringman. The report refers to a "complaint under PREA guidelines alleging staff sexual misconduct on 5/6/16" although it does not contain a grievance identifier number or AIPAS number. It is assumed that this is the misconduct report that followed the investigation into plaintiff's grievance regarding the alleged search of his person prior to the strip search at the Control Center on May 6, 2016. This report indicates a hearing date of June 28, 2016, for the misconduct prosecution but does not indicate what the result of the hearing was. While the record does not support defendants' assertion that plaintiff was found guilty of misconduct and punished for submitting a grievance relating to his claims of misconduct regarding the alleged search before the strip search on May 6, 2016, that assertion is accepted by this court as being accurate and will inform the decision made herein.

A report was prepared regarding Grievance Identifier 17498, also referred to as AIPAS #17498, and that report described the allegations as arising from a call plaintiff made to the PREA Hotline on May 7, 2016, in which he alleged that Off. Young asked him, after the strip search on May 6, 2016, "How does your asshole

feel from opening it up?"[5] The investigation consisted of interviewing plaintiff, Off. Brighton, Off. Young, and Sgt. Leslie. The three officers denied that Off. Young had made the statement as alleged by plaintiff. The investigator concluded that the grievance was "unfounded" and recommended that the matter be reviewed for "disciplinary action against the prisoner." Warden Klee concurred in that recommendation on June 22, 2016, and directed that a "misconduct should be written" on plaintiff. Defendants' Motion Exhibit 15. (ECF No. 63-16, PageID.590-611).

A misconduct report was prepared on June 22, 2016, relating to the allegation that plaintiff made "false accusations of misconduct against staff" regarding events on May 6, 2016. While the misconduct report (Defendants' Motion Exhibit 16, ECF No. 63-17, PageID.613-614) does not identify the specific circumstance in which plaintiff allegedly made these false accusations, the record suggests that they were made in the course of what has been described as AIPAS #17498 - the allegations by plaintiff of improper statements made by Off. Young following the strip search on May 6, 2016.  Plaintiff was found guilty at a hearing

---

[5] Part of the confusion in the record is based on the inconsistent reference to the Grievance Identifier numbers. The first relevant grievance that plaintiff filed relating to the allegation of an inappropriate search on the way to the strip search on May 6, 2016, was assigned Grievance Identifier No. 17498 but that same number was used to refer to another grievance relating to statements allegedly made by Off. Young following the strip search on that date.

on July 3, 2016 and given five days of "toplock" as a sanction for the misconduct. *Id*.

As noted above, the grievance plaintiff filed with respect to allegations against Off. Brighton and comments he allegedly made on May 7, 2016, to plaintiff was initially assigned Grievance Identifier No. 17661. Defendants' Motion Exhibit 12. (ECF No. 63-13, PageID.570). An investigation was initiated into these allegations and a report was prepared based on that investigation. Defendants' Motion Exhibit 13. (ECF No. 63-14, PageID.574-585). The investigation report indicated that Off. Brighton denied the allegations and that plaintiff had "nothing to say." The report concluded that based on the "lack of cooperation by the alleged victim" and the lack of other evidence the claim was considered "unfounded." *Id*. A Misconduct Report was prepared relating to the claims made in Grievance Identifier No. 17661 and plaintiff was found guilty of misconduct and given three days of "toplock" as a sanction for that misconduct. Defendants' Motion Exhibit 14. (ECF No. 63-15, PageID.587-588).

The grievance plaintiff filed regarding allegations of "sexual harassment and retaliation" during the search of his housing unit by Off. Brighton on May 15, 2016, was also assigned Grievance Identifier No. 17606. (ECF No. 1, PageID.13). Defendants do not address the substance of this grievance in their motion.  While documents are attached to the motion that refer to Grievance Identifier No. 17606

or AIPAS# 17606, those documents do not reflect any investigation or findings regarding the accusations against Off. Brighton regarding his conduct on May 15, 2016.

On May 8, 2016, Off. Brent wrote four misconduct charges against plaintiff relating to events on January 2, 2016, January 19, 2016, January 20, 2016, and February 1, 2016, that involved plaintiff's use of another prisoner's personal identification number to make phone calls. Defendants' Motion Exhibit 17. (ECF No. 63-18, PageID.615-621). Three of those charges were consolidated into one misconduct and plaintiff pled guilty to the charges. He was given a total of 13 days of loss of privileges as a sanction for that misconduct. *Id*.

Given a liberal reading of the complaint due to plaintiff's *pro se* status, as required by *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the complaint alleges that Warden Paul Klee retaliated against him for filing the grievances noted above, that Off. Michael Brent retaliated against him for filing those grievances, and that Sgt. Leslie, Off. Young, and Off. Brighton conspired to sexually assault him. Although not specifically invoked in the complaint, the court construes these claims as being made pursuant to 42 U.S.C. § 1983 and the Eighth Amendment prohibition against cruel and unusual punishment as well as the First Amendment right of free speech.

## III.   ANALYSIS AND RECOMMENDATION

### A.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with

proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary

judgment.  *Celotex*, 477 U.S. at 323.  The Court must construe Rule 56 with due

regard not only for the rights of those "asserting claims and defenses that are

adequately based in fact to have those claims and defenses tried to a jury," but also

for the rights of those "opposing such claims and defenses to demonstrate in the

manner provided by the Rule, prior to trial, that the claims and defenses have no

factual basis."  *Id*. at 327.

     B.    <u>Discussion</u>

       1.    Eighth Amendment – Sexual Harassment

In their motion for summary judgment, defendants Leslie, Brighton, and

Young contend, generally, that they did nothing that would constitute an Eighth

Amendment violation, and even if everything that plaintiff alleges was true, the

alleged conduct would not rise to the level of an Eighth Amendment violation as a

matter of law.

In his response to the motion, plaintiff argues that the conduct of these

defendants that he asserts took place does represent an Eighth Amendment

violation, even if it was a single event, that a thorough investigation was not

conducted because no video footage of Housing Unit 3 was ever reviewed or

produced, and that the conclusions of the investigators were biased against him.

Plaintiff has alleged four discrete instances of what he claims constitute

violations of the Eighth Amendment prohibition against cruel and unusual

punishment. Those four instances include: (1) an inappropriate search by defendants Leslie, Brighton, and Young on May 6, 2016, while plaintiff was being escorted from Housing Unit 3 to the Control Center where a strip search was to be conducted; (2) harassing statements made by defendant Young immediately following the strip search at the Control Center on May 6, 2016; (3) harassing statements made by defendant Brighton on May 7, 2016, while plaintiff was walking in the area of his housing unit; and (4) harassing comments made by defendant Brighton on May 15, 2016, while defendant Brighton was conducting a search of plaintiff's housing unit.

Only the first of these claims includes an allegation of physical contact between plaintiff and the defendants. Plaintiff alleges that while he was being escorted from his housing unit to the Control Center for a strip search he was handcuffed and his arms were being held by defendant Young while defendants Brighton and Leslie "opened up [his] jeans and … touched [his] private areas" while searching him. (ECF No. 1, PageID.6).

In order to state a cruel and unusual punishment claim under the Eighth Amendment, a prisoner must allege that (1) the defendant acted with a subjectively culpable state of mind and, (2) that the conduct was objectively "harmful enough" or "sufficiently serious" to reach constitutional dimensions. *Crawford v. Cuomo*, 796 F.3d 252, 256-57 (2d Cir. 2015), quoting from *Hudson v. McMillian*, 503 U.S.

1, 8 (1992). With respect to the subjective prong of the test, courts will look at "whether the [prison] official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.'" *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018), quoting from *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). "Because this is a mental state, 'unless admitted, [it] has to be inferred rather than observed' from conduct such as harassing comments, or an overly invasive search in violation of facility policy." *Id*, quoting from *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012).

The objective prong of the cruel and unusual test requires that harm be inflicted on the prisoner based on conduct that is "repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id*. at 38 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). Exactly what constitutes a constitutional violation will be dependent on "evolving standards of decency that mark the progress of a maturing society." *Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1987). Examples of conduct that objectively did not rise to the level of a constitutional violation include: (1) guard dragged his hands down plaintiff's buttocks, gripped his buttocks, patted his thighs, squeezed plaintiff's "ass" while whispering in a "sexual manner" during a pat-down search, (2) guard rubbed his erect penis against plaintiff's buttocks through clothing; (3) guard came up to

prisoner from behind, grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him; (4) female guard squeezed plaintiff's penis, made sexual comments, pressed her body against plaintiff's; (5) guard placed his hands inside plaintiff's boxer shorts, stroked his penis once and grabbed his scrotum, made comments; (6) guard gave plaintiff an upper cut to the groin, groped and massaged plaintiff's penis, and examined plaintiff's butt like a doctor and (7) guard made sexually explicit comments combined with fondling and rubbing on thighs and breasts. *Bakhtiari v. Madrigal*, 2019 WL 2084445 (M.D.PA. 2019) (collecting cases).

At some point in the past *Bodie v. Schnieder*, 105 F.3d 857 (2d Cir.1997), stood as a standard by which allegations of sexual abuse by prison guards were objectively measured against the Eighth Amendment. Some courts viewed *Bodie* as standing for the proposition that a cognizable Eighth Amendment claim only arose where the alleged conduct occurred on more than one occasion, was excessive in duration, involved direct contact with an inmate's genitalia, or caused physical injury, penetration, or pain. *Crawford*, 796 F.3d at 257.  In 2015, the Second Circuit, which had originally decided *Bodie,* reasoned that "conduct that might not have been seen to rise to the severity of an Eighth Amendment violation [when *Bodie* was decided] may now violate community standards of decency. *Id*. at 260. In *Crawford*, the court concluded that on a single occasion when the

defendant "squeezed" and "fondled" plaintiff's penis, "roamed" his hands down plaintiff's thigh, while making demeaning comments and taunts about plaintiff's genitalia, "suggest that [defendant] undertook the search in order to arouse himself, humiliate [plaintiff], or both" and therefore the Eighth Amendment was violated. *Id*. at 259.

Plaintiff's allegations in the present case relating to the May 6, 2016, incident, involving the search before the strip search, include the claim that defendant Young held his arms while plaintiff was handcuffed, and defendants Leslie and Brighton "opened up [his] jeans and went inside [his] underwear, touched [his] private areas gentiles [sic] and opened [his] buttocks." Plaintiff claimed that he was "inappropriately searched" by these defendants while being escorted from his housing unit to another area where a strip search was to be completed. (ECF No. 1, PageID.6). No contemporaneous statements are attributed to any of these defendants by plaintiff.

Defendants deny that the events alleged by plaintiff took place. (Brighton Affidavit, ECF No. 63-2, PageID.488-491; Leslie Affidavit, ECF No. 63-3, PageID.493-496; Young Affidavit, ECF No. 63-4, PageID.498-501).

While defendants make no attempt to justify the alleged conduct as a routine search of plaintiff's person, plaintiff's description of the event characterizes the conduct of defendants as a "search" as opposed to some attempt by defendants to

arouse themselves or humiliate plaintiff. No estimates of the duration of this "search" are provided but nothing in plaintiff's allegations indicate that it was prolonged or anything but brief.

In analyzing the subjective component of an Eighth Amendment claim, the focus is on the intent of the officer. *Ricks v. Shover*, 891 F.3d 468, 475-476 (3d Cir. 2018). Based on the facts alleged by plaintiff, there is insufficient evidence to justify a reasonable inference that the officer, or officers, who conducted this "search" acted with an intent to seek sexual gratification or to humiliate plaintiff. The search was brief, the touching of plaintiff's genitalia appeared incidental to the process rather than the primary purpose, and there were no comments made by the defendants that would reveal a malevolent purpose. A related, but non-dispositive, factor here is that defendants have not claimed this was a search. Additionally, the search, as described, would not appear to be consistent with the types of searches permitted by Department of Corrections Policy. Defendants' Motion Exhibit 8. (ECF No. 63-9, PageID.523-533).[6] Searching a prisoner in a manner not authorized by written policy, without more, is not adequate to reasonably infer a sexually abusive purpose.

---

[6] Pat-down or clothed body searches of prisoners are permitted at any time pursuant to the written policy. The search plaintiff describes is neither a pat-down nor a clothed body search as defined by that policy.

Additionally, even if there were no clear penological purpose to the actions of these defendants, the alleged facts would not rise to the level of an Eighth Amendment violation. "[E]ven if sexualized touching lacks a penological purpose, it may still fall below the threshold of constitutional cognizability based on a lack of objective seriousness." *Ricks v. Shover*, 891 F.3d 468, 476 (3d Cir. 2018). "[O]bjectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." *Id*. at 478. The conduct alleged by plaintiff is limited to the incidental touching of his genitalia during what he characterized as a search and does not involve fondling, abuse, coerced sexual activity, or exchanges of sexual activity for special treatment. While the factors listed in *Ricks* were not intended to be an exclusive list of conduct that would violate the Eighth Amendment it is instructive in determining the objective seriousness of the conduct in question. Also, the examples listed in *Bakhtiari* as noted above all appear more aggravated than the instant conduct and those fell beneath the threshold for Eighth Amendment violations.

The other allegations of sexually abusive conduct against these defendants involve comments or statements to plaintiff that he alleges are sexual harassment. "Allegations of verbal harassment … by prison officials toward an inmate do not constitute punishment with the Eighth Amendment. Nor do allegations of verbal

harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Johnson v. Moore*, 7 Fed. Appx. 382, 384 (6th Cir. 2001) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).  "Verbal abuse or harassment by corrections officers, even if reprehensible, do not amount to punishment under the Eighth Amendment and inmates have no constitutional right to be free from such." *McCain v. Jenkins*, 2019 WL 3501522, *4 (S.D. Ohio. Aug. 1, 2019). The three statements that plaintiff attributes to defendants Young and Brighton, if made, may have been crude and beneath the dignity of a professional corrections officer but they did not violate the Eighth Amendment.

### 2.    Retaliation

Retaliation, although not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, plaintiff must establish: 1) he engaged in protected conduct, 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) that a causal connection exists between the first two elements. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff claims the misconduct tickets that were instituted against him were done so in retaliation for the grievances he filed against prison staff. Plaintiff filed

grievances against prison staff members on May 6, 2016 (ECF No. 1, PageID.6-7),

May 7, 2016 (plaintiff filed two grievances on this date, one in writing, ECF No. 1,

PageID.10, and a second one by phone, Defendants' Exhibit 15, ECF No. 63-16,

PageID.591), and May 17, 2016 (ECF No. 1, PageID.13). Those grievances

(except for the grievance plaintiff submitted on May 17, 2016) were investigated

and the reports resulting from the respective investigations were submitted to

Warden Klee on June 20, 2016, June 22, and June 26, 2016.

**(a) Grievance Regarding Search On May 6, 2016**

The report of the investigation relating to plaintiff's allegations about the

search before the strip search concluded that the "evidence" did not support

plaintiff's allegations and therefore they were "unfounded." (Defendants' Motion

Exhibit 10, ECF No. 63-11, PageID.544).  The report was submitted to Warden

Klee on June 22, 2016, and he authorized a misconduct ticket "for making false

allegations" in the grievance on June 23, 2016. (Defendants' Motion Exhibit 10,

ECF No. 63-11, PageID.540). The misconduct ticket based on that authorization

was written on June 23, 2016. (Defendants' Motion Exhibit 11, ECF No. 63-12,

PageID.568). The misconduct report does not fully include what happened as a

result of the ticket but does indicate a hearing on the misconduct was scheduled to

take place on June 28, 2016. *Id*. While the documents don't reflect what happened,

defendants have asserted in their motion that plaintiff was found guilty and was given a "loss of prison privileges" as a punishment. (ECF No. 63, PageID.462).

### (b)  Grievance Regarding Statement Made On May 6, 2016

The report of the investigation resulting from plaintiff's grievance, made by phone on May 7, 2016, that Off. Young made harassing statements to him immediately following the strip search on May 6, 2016, concluded that "there was no evidence to support the allegations" and therefore the allegations were "unfounded." (Defendants' Motion Exhibit 15, ECF No. 63-16, PageID.594). That report was submitted to Warden Klee on June 20, 2016, and on June 22, 2016, the warden authorized a misconduct ticket for plaintiff based on "false allegations." (Defendants' Exhibit 15, ECF 63-16, PageID.590). The misconduct ticket, based on the warden's authorization, was written on June 22, 2016, the hearing on the ticket was held on July 3, 2016, plaintiff was found guilty, and he was given five days of "toplock" as a punishment. (Defendants' Motion Exhibit 16, ECF No. 63-17, PageID.613-614).

### (c)  Grievance Regarding Statement Made on May 7, 2016

The report of the investigation resulting from plaintiff's grievance, submitted on May 7, 2016, that Off. Brighton made harassing statements to him on May 7, 2016, concluded that it was a case "of one person's word against another," that plaintiff "did not contribute any evidence beyond his original complaint," and

that the allegation was "unfounded." (Defendants' Motion Exhibit 13, ECF No. 63-14, PageID.576). That document does not show that the report was submitted to Warden Klee but it was submitted to a deputy warden on June 26, 2016. (Defendants' Motion Exhibit 13, ECF No. 63-14, PageID.574). A misconduct ticket was written on July 12, 2016, regarding the incident and the misconduct report stated that it had been authorized by Warden Klee. (Defendants' Motion Exhibit 14, ECF No. 63-15, PageID.587).  A hearing on the misconduct ticket was held on July 18, 2016, plaintiff was found guilty of "false allegations," and he was given three days of "toplock" as a punishment. (Defendants' Motion Exhibit 14, ECF No. 63-15, PageID.588).

### (d) Grievance Regarding Statement Made on May 15, 2016

Plaintiff filed a grievance on May 17, 2016 relating to allegations that Off. Brighton made harassing statements to him on May 15, 2016, while he was searching plaintiff's housing unit. This record does not contain any information about whether those allegations were investigated, whether a hearing was held, and what the disposition of that grievance was.

### (e) Misconduct Regarding Events of January and February 2016

On May 8, 2016, four misconduct tickets were written against plaintiff regarding allegations that on January 6, 2016, January 20, 2016, January 23, 2016, and February 1, 2016, he inappropriately used another inmate's personal

identification number to make phone calls. Three of those incidents were consolidated into one offense, plaintiff pled guilty to the offenses, and he was given a total of 13 days of loss of privileges as a punishment. The tickets were written by Off. Michael Brent and there is no indication that Warden Klee had any involvement in those tickets being issued. (Defendants' Exhibit 17, ECF No. 63-18, PageID.616-621).

### (d) Misconduct Regarding Events of May 6, 2016

During the strip search of plaintiff on May 6, 2016, he made certain statements to the officers (Leslie, Brighton, and Young) conducting the search. Sgt. Leslie subsequently wrote a misconduct ticket relating to those statements on May 7, 2016. The ticket stated that the comments were made to "harass and degrade" the officers.  A hearing was held on May 16, 2016, plaintiff was found guilty of making comments that were "unauthorized and rude" and were "sexual in nature" and he was given 14 days loss of privileges as a punishment. (Defendants' Exhibit 7, ECF No. 63-8, PageID.517-522).

### Warden Klee

With respect to the retaliation allegations against Warden Klee, defendant argues that the three misconduct tickets, issued based on the authorization of the warden, were not in retaliation for the grievances filed by plaintiff.  According to the defendant's argument, the misconduct tickets were issued because Warden

Klee believed "that Plaintiff had filed false grievances against Defendants Brighton, Leslie and Young, with the knowledge that they were false." (ECF No. 63, PageID.476). Defendant further contends that the grievances "were found to be false and lacked sufficient evidence of any violations having occurred." (ECF No. 63, PageID.477). Defendant apparently does not contest the issues of whether plaintiff was exercising a Constitution right in filing the grievances or that a person or ordinary firmness would be deterred from engaging in that Constitution right by having a misconduct ticket issued against them. Causation is the only issue that defendants contest in their motion.

Defendant Klee argues that he reviewed the three investigation reports that resulted from the grievances filed by plaintiff and concluded that plaintiff had "filed false grievances against Defendants Brighton, Leslie and Young, with the knowledge that they were false." (ECF No. 63, PageID.476). Defendant Klee denies he was motivated by any other factor besides plaintiff's false statements and that plaintiff's allegations to the contrary are merely "conclusory."

Defendant Klee points to the investigations into three of the four grievances filed by plaintiff as the basis of his belief that plaintiff made knowingly false accusations against defendants Brighton, Leslie, and Young. The "investigations" consisted solely of interviews of plaintiff and Brighton, Leslie, and Young - the individuals who were accused of wrongdoing in the grievances. No disinterested

individuals were interviewed and no surveillance video was reviewed prior to the reports being completed and submitted to Warden Klee. This "he said-they said" basis for Warden Klee's belief is not a particularly strong basis for the conclusion that plaintiff made intentionally false statements in his grievances. Under that standard, every time a prisoner accused a prison staff member of wrongful conduct, and the staff member denied the allegation, the prisoner would be subject to a misconduct charge for making false allegations. The misconduct tickets were issued the day following Warden Klee's authorization, in two instances, and within approximately two weeks in the third instance.

The facts alleged by plaintiff include the following: plaintiff was inappropriately searched by defendants Leslie, Young, and Brighton while being escorted to a location where a strip search was to be performed on May 6, 2016; during the course of the strip search defendants Young and Leslie made harassing statements to plaintiff and, when plaintiff complained about the multiple times he had been searched in that manner, Leslie threatened to search plaintiff's cell and take or destroy plaintiff's personal property; Young made harassing statements to plaintiff following the strip search; plaintiff submitted a grievance on May 6, 2016, relating to the inappropriate search he was subjected to while being escorted to the location of the strip search; Brighton made harassing statements to plaintiff on May 7, 2016, and that same day plaintiff filed grievances against Young and

Brighton relating to the harassing statements; Leslie wrote a misconduct ticket against plaintiff on May 7, 2016, relating to statements plaintiff had made during the strip search; on May 8, 2016, a misconduct ticket was written (by Off. Brent) relating to events that had taken place in January and February of 2016; and on May 15, 2016, Leslie directed another officer to search plaintiff's cell and, immediately thereafter, Brighton searched plaintiff's cell and, complained, Brighton stated something to the effect that he liked to touch plaintiff and was going to give plaintiff something else to write about; plaintiff was subsequently issued misconduct tickets for filing the grievances on May 6, 2016, and May 7, 2016.

It is not for the court to decide if plaintiff's allegations are truthful. *Scott v. Stone*, 254 Fed. Appx. 469, 473 (6th Cir. 2007), citing *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000). What is required is that the court determine if there is sufficient evidence for the fact finder to determine that the adverse action was motivated in part by the protected conduct. In making that determination, the facts have to be viewed in the light most favorable to the non-moving party, which in this case is the plaintiff. *Id*. Here, the crux of the issue is the question of causation – whether the adverse action taken against plaintiff was motivated at least in part by the plaintiff's protected conduct. *Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002). "[T]he causation element of Plaintiff's First Amendment

retaliation claim looks to Defendant's motivation in [taking the adverse action]. *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002). 'When the defendants' intent is at issue, 'summary judgment is particularly inappropriate.'" *Id.* (quoting *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir. 1986)." *Mosholder v. Barnhardt*, 2010 WL 5559406, *14 (E.D. Mich. 2010).

In this case, plaintiff had five misconduct tickets written against him within two days of him submitting three of the four grievances he filed. One of those related to statements he made to prison staff during the strip search and the other four related to improprieties with telephone usage in January and February of 2016. Approximately two weeks later, another two misconduct tickets were written relating to the grievances he filed, and approximately a month later a third grievance was written also relating to the grievances he filed.

The last three misconduct tickets were directly authorized by defendant Klee. There can be no question that the latter three misconduct tickets resulted from plaintiff's grievances because that is what they were directly related to. In many cases the protected activity is based on a different set of facts than the alleged retaliatory adverse action. Such is not the case here where the protected activity (grievances against prison staff) is the basis of the misconduct tickets that were issued to plaintiff, albeit including the allegation that the grievances were knowingly false.

Given the short time between plaintiff submitting the grievances and the misconduct tickets relating to them the question arises whether an inference of retaliation can reasonably result from that timing. Defendant contends that mere temporal proximity is insufficient to establish a retaliatory motive, citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). However, the law in the Sixth Circuit is not that clear. In *Mosholder v. Barnhardt*, 2010 WL 5559406 (E.D. Mich. Feb.12, 2010) Judge Robert Cleland, after reviewing several cases from the Sixth Circuit, stated, in ruling on a retaliation case, "[t]he court is persuaded that, despite language to the contrary, case law in this circuit allows the causal connection to be found by temporal proximity alone in certain, narrow circumstances."  "[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

With respect to the question of causation, "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden shifts to the defendant [to] show that he would have taken the same action in the absence of the protected activity." *Thaddeus-X v. Blatter*, 175 F.3d at 399.

Plaintiff's allegations, taken in the light most favorable to him as is required, establish that he was subjected to a pattern of harassment by defendants Leslie,

Brighton, and Young following his complaint about an excessive number of searches. Harassing comments were allegedly made to plaintiff during the strip search, immediately following the strip search, the day after the strip search, and approximately ten days after the strip search. The three grievances relating to the conduct of defendants Leslie, Brighton, and Young were "investigated" but the investigations consisted of interviewing only those defendants. The reports of the "investigations" were submitted to Warden Klee and he authorized the issuance of misconduct tickets against plaintiff which were written almost immediately after the authorizations.

Defendant argues that defendant Klee, after his "review" of the three investigations into plaintiff's grievances, "determined" that plaintiff had filed "false grievances against Defendants Brighton, Leslie and Young with the knowledge that they were false" and that he was not "motivated in any part by a desire to punish Plaintiff for the exercise of a constitutional right." (ECF No. 63, PageID.476-77).

This record clearly indicates that defendant Klee intended that plaintiff be punished for submitting these three grievances. His own words strongly suggest that. In one instance defendant Klee states that "Prisoner Miller 419276 should be written a misconduct" (ECF No. 63-11, PageID.540) and in a second instance he states "[a] misconduct should be written on Prisoner Miller #419276." (ECF No.

63-16, PageID.590). It is fair to say that these comments made by defendant Klee are premised on reports that concluded that plaintiff made intentionally false statements but, as previously noted, those reports merely contain the denials of the prison officials that plaintiff accused of misconduct.[7]

The present case contains similarities to the facts in *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002). In *Brown* the prisoner plaintiff had filed grievances claiming that money had been improperly taken from his personal prison account and even accused prison officials of embezzling money from that account. An investigation was conducted which concluded that the plaintiff's allegations were "meritless." Following that investigation the plaintiff was issued a misconduct ticket for making false allegations. The *Brown* plaintiff sued and claimed, among other things, that prison officials retaliated against him for complaining about his personal prison account. The district court had granted summary judgment in favor of the defendants stating "'defendants issued the misconduct ticket solely because they believed plaintiff acted improperly and made false allegations.'" *Id*. at 790. The Sixth Circuit reversed the district court's grant of summary judgment on the retaliation claim pointing out that there were facts that the prison officials were

---

[7] A decision-maker is responsible if the decision is based on an "independent investigation" that contains "biased" factual information that influences the decision-maker. *Chattman v. Toho*, 686 F.3d 339, 352 (6th Cir. 2011). *See also, Finch v. Exavier University*, 689 F.Supp.2d 955, fn.3 (S.D. Ohio 2010) ("where … the final decision-maker reviewed and approved a recommendation [for adverse action] the … animus of the recommender can be imputed to the decision-maker.").

aware of that established the plaintiff "might have a valid complaint" regarding his personal prison account.[8]  The equivocal nature of the underlying facts caused the Sixth Circuit to "conclude that a reasonable jury could find that [the plaintiff] has established that the defendant's adverse action was motivated at least in part by his protected conduct." *Id.*

The *Brown* court further found that while the "evidence presented by the defendants is relevant to the question of whether they 'would have taken the same action in the absence of the protected activity,' it is not sufficient to establish as a matter of law that there was no causal connection between the protected conduct and the adverse action." *Id.*  The court therefore found that the district court had erred in finding that "no genuine issue of material fact exists regarding the third element of [plaintiff's] retaliation claim." *Id.*[9]

Addressing a broader concern, the *Brown* court stated:

> We are dubious that the issuance of a major misconduct ticket under such circumstances could ever be deemed consistent with First Amendment principles. Prison officials are clearly free to punish inmate conduct that threatens the orderly administration of the prison. But "[t]he State must ensure … that [conduct-

---

[8] Some of the facts that supported that plaintiff's position came out in the hearing on the misconduct ticket. That hearing resulted in plaintiff being found not guilty of the misconduct charge. The fact that the plaintiff there was found not guilty of the misconduct charge does not distinguish it from the present case in a meaningful way because a plaintiff does not have to prevail on misconduct charges to establish retaliation. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007).

[9] Simple denial of allegations of retaliation, as was the case here, is not sufficient to meet the burden of showing that the defendant would have taken the same action in the absence of the protected conduct. *Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018).

> regulating] portions of the prison rules are not used as a
> backdoor means of punishing inmates for exercising their right
> to criticize the legality of officials' actions. Any attempt to use
> the rules in this manner would result in an unconstitutional
> application of the rules." *Clarke v. Stalder*, 121 F.3d 222, 230
> (5th Cir.), *vacated on other grounds by* 133 F.3d 940 (5th Cir.
> 1997).

*Id.* at 791.

In the present case, as in *Brown*, the underlying facts are equivocal. The "investigations" relied solely on the statements of the accused to reach the conclusion that the plaintiff made knowingly false statements. This "he said – they said" paradigm should never result in a determination that summary judgment is appropriate because "no genuine issue of material facts exists." The facts are to be viewed in the light most favorable to the plaintiff and courts, for the most part, should not be deciding whether plaintiff's allegations are truthful. This Court does not make credibility determinations and decide whom to believe when there are conflicting stories, both equally believable.  *Dawson v. Dorman*, 528 Fed. Appx. 450, 452 (6th Cir. 2013).  That is for the jury.

### Michael Brent

Defendant moves for summary judgment as to the retaliation claim against Corrections Officer Michael Brent.  Defendant Brent wrote four misconduct tickets against plaintiff on May 8, 2016. All four of these tickets related to allegations that plaintiff had used another prisoner's PIN number without authorization when he

made four phone calls in January and February of 2016. Plaintiff pled guilty to these misconduct tickets during hearings held on May 17-18, 2016, and he was given a loss or privileges, apparently including a loss of telephone privileges, as a punishment for the misconduct. (ECF No. 63-18, PageID.616-21). Plaintiff alleges that these misconduct tickets were written against him in retaliation presumably for filing the grievances against other prison staff members.

Defendant Brent has filed an affidavit claiming that he was not aware of the grievances plaintiff had filed when these misconduct tickets were written and that he did not retaliate against plaintiff for filing those grievances. (ECF No. 63-6, PageID.509-13). The affidavit does not address why it took several months to file the misconduct tickets nor why they were filed a day or two after plaintiff had filed the grievances that are relevant to this case.

The analysis of plaintiff's retaliation claim against defendant Brent, in relation to defendant's motion for summary judgment, employs the same three part test identified above. Plaintiff must show (1) that he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). With respect to the third element of this

test, the subjective motive of the defendant is at issue. Once the plaintiff has met his burden to establish that his protected conduct was a motivating factor in the defendant's decision to initiate the adverse action the burden shifts to the defendant to show, by a preponderance of the evidence, that he would have taken the same action in the absence of the protected conduct. If the defendant can make this showing he is entitled to prevail on summary judgment. *Id.*

Temporal proximity between the protected conduct and the adverse action can give rise to an inference that the adverse action resulted from the protected conduct. *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004). On occasion, the temporal proximity "alone may be significant enough to … create an inference of retaliatory motive." *Id.*  In the present case, the temporal proximity between plaintiff filing grievances relating to the conduct of prison staff and defendant Brent's initiating a misconduct ticket is particularly significant. Plaintiff's grievances were filed on May 6 and 7, 2016, and the misconduct ticket was written by defendant Brent on May 8, 2016. The timing of the misconduct ticket was also suspicious in that the underlying conduct was in January and February of 2016 but the ticket was not written until May of 2016. All the other misconduct tickets identified in this case were written days or weeks following the alleged misconduct rather than months and defendant Brent offered no innocent explanation for that delay. Based on the temporal proximity between the grievances and the

misconduct ticket the undersigned concludes that plaintiff has established a prima facie case of retaliation.

Turning next to the question of whether defendant Brent would have reached the same decision regarding the misconduct ticket in the absence of the protected conduct, such decisions are normally for a jury to decide. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). However, there are circumstances where there is no genuine issue of fact and summary judgment in favor of the defendant is appropriate.  In this case, defendant Brent has submitted an affidavit that states that he did not know about the grievances plaintiff had filed and therefore could not have been influenced by plaintiff's protected conduct. (ECF No. 63-6, PageID.509-13).

In some cases the temporal proximity of the adverse action to the protected conduct, which can establish an inference in favor of retaliation, is supplemented with other evidence that might support a claim of retaliation. For example, in *Mosholder v. Barnhardt*, 2010 WL 5559406 (E.D. Mich. 2010) temporal proximity was coupled with heightened security to both create a prima facie case and identify sufficient evidence that allowed the court to conclude a reasonable jury could determine that the adverse action was undertaken, at least in part, with a motive of retaliation.

In surveying the evidence in the present case, there is no evidence that defendant Brent did know about plaintiff's grievances (to contradict Brent's affidavit), there is no evidence that Brent had any contact with plaintiff (besides the investigation) or made any statements to him, there is no evidence indicating personal animus on the part of Brent towards plaintiff, and there is no evidence that Brent's prosecution of plaintiff for this misconduct was undertaken selectively such that an inference of retaliation would be permissible.  Additionally, the underlying facts to the misconduct were admitted by plaintiff which, essentially, removes any subjective component to the decision to write the ticket that might exist if the underlying facts were equivocal and challenged by plaintiff.[10]

The undersigned concludes that defendant Brent has established, by a preponderance of the evidence, that he would have reached the same decision regardless of the grievances plaintiff filed and therefore defendant Brent is entitled to summary judgment on the retaliation claim against him.

---

[10] Adverse action based on subjective determinations provide a "ready mechanism for discrimination" and should be "carefully scrutinized in order to prevent abuse." *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 93 (6th Cir. 1982)

3.    Eleventh Amendment and Qualified Immunity

Defendants argue that they are entitled to immunity under the Eleventh Amendment because they were acting in their official capacity at all times relevant to the claims in the law suit and a "suit against a state employee in his official capacity is tantamount of a suit against the state itself and must be dismissed on the basis of Eleventh Amendment immunity." (ECF 63, PageID.480). However, plaintiff's complaint does not evidence an intention to sue any of the defendants in their official capacity. Neither the location on the form complaint where a plaintiff would indicate the suit is against the defendants in their official capacity nor the statement of claims portion of the complaint indicate the defendants are sued in their official capacity. Defendants motion for summary judgement on this basis should be denied as moot.

Defendants argue that they are entitled to qualified immunity because plaintiff's constitutional rights were not violated and "Defendants all acted reasonably at all times." (ECF No. 63, PageID.482). The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  One part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.*  If the first question was resolved in

the affirmative, then the court would decide "whether the right was clearly established." *Id.* If both questions are resolved in the affirmative, then the doctrine of qualified immunity would not apply, and the case could proceed. Conversely, if the answer to either question is no, then qualified immunity obtains. The court may consider the questions in whichever order the court concludes makes the most sense. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). "When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right." *Folks v. Petit*, 676 Fed. Appx. 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015)).

As noted above, with respect to plaintiff's Eighth Amendment claim against defendants Leslie, Brighton, and Young, plaintiff has not offered sufficient evidence to create a genuine dispute of fact that those defendants violated his constitutional rights. Similarly, with respect to plaintiff's First Amendment claim against defendant Brent, plaintiff has not offered sufficient evidence to create a genuine dispute of fact that this defendant violated his constitutional rights. Therefore, defendant's motion for summary judgment based on qualified immunity as to those four defendants should be granted.

However, with respect to the First Amendment claim against defendant Klee, plaintiff has offered sufficient evidence to create a genuine dispute of fact that defendant Klee violated his constitutional rights.  Additionally, the constitutional right at issue in this claim was clearly established. An inmate has an "undisputed First Amendment right to file grievances against prison officials." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Retaliating against an inmate for filing a grievance is a violation of the First Amendment rights of that inmate. *Thaddeus-X v. Blatter*, 175 F.3d at 394. Defendant Klee's motion for summary judgment based on qualified immunity should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant Klee's motion for summary judgment be **DENIED** and that defendants Leslie, Brighton, Young, and Brent's motions for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 27, 2020                     s/Michael J. Hluchaniuk
                                            Michael J. Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 27, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant:  <u>Tony Miller #419276, Michigan Reformatory, 1342 West Main Street, Ionia, MI  48846.</u>

<u>s/Durene Worth</u>
Case Manager
(810) 341-7881
durene_worth@mied.uscourts.gov